AO 106 (Rev 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
2021 JUL -6 PM 2: 26
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | | |
|---|---|---|
| In the Matter of the Search of *(Briefly describe the property to be searched or identify the person by name and address)* Storage One Self Storage, Unit 216 10991 National Road Southwest, Etna, Ohio 43062 registered in the name of David Varner Jr. | ) ) ) ) ) ) | Case No. 2:21-mj-456 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Storage One Unit 216 10991 National Road Southwest, Etna, Ohio 43062 registered in the name of David Varner Jr. A multi unit storage storage facility with a secured entrance.

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:
Illegal narcotics, books, records, receipts, notes, ledgers, money orders, airline tickets, and other records related to the receipt, and sales of narcotics.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution/Manufacturing/Possession with intent to Distribute a Controlled Substance |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Aaron Green, ATF SA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 6, 2021

_____
Kimberly A. Jolson
United States Magistrate Judge

City and state: Columbus, Ohio

THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT, EASTERN DIVISION OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>STORAGE ONE SELF STORAGE<br>LOCATED AT 10991 NATIONAL RD SW,<br>ETNA, OHIO 43062 Unit 216 | Case No. _____ |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Aaron Green, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as **10991 National Road SW, Etna, Ohio 43062 (Unit 216)**, hereinafter "PREMISES," further described in Attachment A, for the things described in Attachment B.

2. Your affiant has been a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since November of 2017. I am a graduate of the ATF National Academy Special Agent Basic Training Program and the Federal Law Enforcement Training Center, Criminal Investigator Training Program. Prior to joining the ATF, I was a member of the Federal Air Marshal Service, with the Department of Homeland Security, from December 2010 to July 2016 and I am a graduate of the Federal Law Enforcement Training

Center, Federal Air Marshal Training Program. Prior to joining the Air Marshal Service, I worked as a patrol officer for the Columbus Police Department in Columbus, Ohio from December 2000 to December 2010. My responsibilities as an ATF Special Agent include the investigation of violent criminal street gangs, narcotics traffickers, money launderers, and firearm-related crimes. I have participated in the execution of search warrants and arrests related to these types of offenses. By virtue of my experience and training, I am familiar with individuals involved in illegal activities, such as narcotics trafficking.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

4. On or about March 2, 2021, your affiant interviewed a Confidential Source (CS) regarding Marekus BENSON (*hereinafter BENSON*) for the purposes of furthering the investigation., who is the target of an ongoing ATF investigation. The CS advised that BENSON, and others travelled from Columbus, Ohio to the area of Garfield, California on or about the week of Memorial Day, May 25, 2020. The CS advised that BENSON purchased approximately four (4) pounds of marijuana from an unknown residence. The CS advised that BENSON booked a hotel room in the area prior to returning to Columbus, Ohio via automobile. The CS advised that on the way back to Columbus, Ohio, BENSON also stopped at a dispensary to purchase approximately a half-pound of marijuana. The CS advised your affiant that

BENSON comes to Columbus, Ohio approximately every three (3) to four (4) months to purchase "Ice" from VARNER JR., also known as "Day Day". Your affiant knows that "Ice" is a common code word for methamphetamine. The CS described VARNER JR. and BENSON as having a close relationship and explained that VARNER shows BENSON everything. According to the CS, VARNER JR. obtains his methamphetamine from California and VARNER JR. was in California at the same time as BENSON the week of Memorial Day 2020. Additionally, the CS stated BENSON distributes his methamphetamine in Johnstown, Pennsylvania, where he resides, because he can make three times the profit in Johnstown as he would in Columbus.

5. On or about May 28, 2020, an Illinois State Police (ISP) Trooper conducted a traffic stop on a 2020 GMC Yukon XL, Utah license F27IZG (rental vehicle), on Interstate 72, at approximately milepost 38. The trooper identified the occupants of the vehicle as Carlos Todd and BENSON. The ISP Trooper smelled the odor of cannabis (marijuana) coming from the vehicle and asked Mr. Todd if there was any cannabis in the vehicle. Mr. Todd stated that they had smoked "weed" in the vehicle but that there was not any cannabis in the vehicle. The ISP trooper also asked BENSON if there was any cannabis located in the vehicle and BENSON stated that there was not. ISP Troopers then conducted a probable cause search of the vehicle and located a black Louis Vuitton bag in the back seat near where BENSON was seated. Inside the bag was a large amount of United States currency totaling $16,920.00. Next to the Louis Vuitton bag ISP troopers discovered a white draw string bag containing multiple jars of raw cannabis (marijuana). While

3

searching the rest of the vehicle, ISP troopers located four (4) clear vacuum-sealed packages of marijuana in a natural void area of the rear driver's side wheel well. The total quantity of marijuana recovered from the vehicle was 2,913.7 grams.

6. On or about March 15, 2021 Columbus Police Officer Jerry Orrick obtained a Pen Register from the Court of Common Pleas in Franklin County for BENSON'S cellular phone. Historical records from the Pen Register show that between May 06, 2019 and April 09, 2021 BENSON and VARNER JR. made approximately 27,556 calls to one another.

7. On or about April 30, 2021 the Commonwealth of Pennsylvania Office of Attorney General arrested BENSON for Homicide, Aggravated Assault, Kidnapping and Criminal Conspiracy. On the same date the Johnstown PA, Police Department and PA Upper Yoder Township Police Department executed a search warrant at BENSON'S residence, located at 300 Golde Street in Johnstown, PA. The Officers recovered suspected heroin, methamphetamine, cocaine, marijuana and over $66,000.00 in United States currency in the residence. Additionally, An Extar, 5.56 firearm and various ammunition were recovered from the residence. Your affiant affirms that BENSON is federally prohibited from possessing a firearm or ammunition.

8. Your affiant believes that the facts in paragraphs 7, 8, and 9 corroborate the information received from the CS in paragraph 6.

9. On or about May 25, 2021 your affiant obtained financial records for VARNER JR from JP Morgan Chase Bank via subpoena which revealed that VARNER JR. had a credit card

4

transaction dated July1, 2019 from the Storage One Self Storage rental facility located at 10991 National Road Southwest in Etna, Ohio.

10. On or about June 15, 2021 your affiant served a Grand Jury Subpoena at the Storage One Self Storage facility to obtain records relating to VARNER JR. The records provided included a leasing agreement, tenant history and a user activity log used by VARNER JR. The records revealed that VARNER JR. was currently renting unit 216, as of April 26, 2021.

11. On or about June 23, 2021 your affiant observed a free air sniff conducted by Columbus Police Department (CPD) Canine "Elvis" who was accompanied by his handler, CPD Officer Kenneth Coontz at the Storage One Self Storage rental facility located at 10991 National Rd. Southwest, Etna, Ohio. The free air sniff was in reference to a storage unit rented by VARNER JR. Your affiant obtained permission from the Storage One Self Storage owner prior to conducting the free air sniff. CPD Officer Coontz walked Elvis passed several units prior to approaching unit 216. As Elvis walked by unit 216, he stopped and began scratching aggressively at the bottom left corner of the unit, thus indicating the possibility of narcotics inside the unit.

12. On or about July 5, 2021 a free air sniff was conducted by Columbus Police Department (CPD) Canine "Ayko" who was accompanied by his handler, CPD Officer J. David Jones at the Storage One Self Storage rental facility located at 10991 National Rd. Southwest, Etna, Ohio, Unit 216. The free air sniff was a follow-up sniff in reference to the previous free air sniff conducted by CPD Officer Coontz on June 23, 2021. As Ayko walked by unit 216, he stopped and demonstrated a positive, aggressive scratch on the door of the unit. Based on the alert, Officer

Jones concluded that the odor of one of the drugs that Canine Ayko is trained and certified to detect was present.

## CONCLUSION

13. Through my experience and my discussions with other experienced law enforcement officers, I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of obtaining importing and distributing narcotics, and their methods of laundering the proceeds of their illegal activities. I am familiar with the methods, schemes, and operations used by major narcotics traffickers and know:

   a. It is my experience that currency transactions that are conducted enable drug traffickers and money launderers to invest the cash proceeds of their illicit businesses into an asset, thereby legitimizing the currency.

   b. That narcotics traffickers are known to trade drugs for items of monetary value;

   c. That some narcotics traffickers conduct various transactions, including the purchase of vehicles and real estate, in order to create an appearance that their income is derived from legitimate sources.

   d. That narcotics traffickers must maintain, on hand, large amounts of United States currency in order to maintain and finance their ongoing narcotics trafficking business;

   e. That narcotics traffickers and money launderers maintain books, records, receipts,

notes, ledgers, and other papers relating to the sale of controlled substances, firearms, and the purchases of assets, including vehicles and real estate and other financial instruments;

f. That the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the narcotics traffickers have ready access to them, i.e., homes, businesses, and automobiles.

g. That it is common for narcotics traffickers and money launderers to secrete contraband, proceeds of narcotics sales, and records of narcotics transactions, sources, and customers, in secure locations within their residences, businesses, garages, storage buildings, and safety deposit boxes for ready access, and also to conceal such items from law enforcement authorities;

h. That persons involved in such trafficking and laundering conceal caches of firearms, narcotics, large amounts of currency, financial instruments, precious metals, jewelry, other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in narcotics trafficking activities, in their residences, businesses, garages, storage buildings, automobiles, and safety deposit boxes;

i. That narcotics traffickers and money launderers commonly maintain addresses or telephone numbers in books, papers, pagers, or cellular phones (and often have

7

multiple cellular phones and pagers) which reflect names, addresses, and/or telephone numbers for their associates in the trafficking organization, even if said items may be in code;

j. That narcotics traffickers and money launderers frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their product, and that these traffickers usually maintain these photographs in their residences, businesses, and automobiles;

k. That when narcotics traffickers and money launderers amass large monetary proceeds from the sale of narcotics, they attempt to legitimize these profits by utilizing foreign and domestic banks and their attendant services, including securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, business fronts and other methods;

l. That narcotics traffickers and money launderers sometimes store documents and records relating to their narcotics suppliers, customers, money, and assets on computer hardware and software, the contents of which frequently yield evidence of trafficking and money laundering crimes;

m. That courts have recognized that unexplained wealth is probative evidence of criminal activity in which transactions involving large amounts of cash and high profit margins are common, including trafficking in controlled substances;

n. That it is common for narcotics traffickers and money launderers to conceal and

store items related to their narcotics trafficking and money laundering within safes, footlockers, boxes, containers and other hidden compartments, and within places that they own or over which they exercise control such as residences, businesses, storage units, and automobiles.

o. Individuals who possess narcotics store them and associated acquisition/disposition documents at their residences, businesses, storage units, and/or in their vehicles;

In view of the above mentioned facts and my training and experience in the investigation of narcotics and financial crimes, I have probable cause to believe that contained within Storage One Self Storage 10991 National Road SW, Etna, Ohio 43062 (Unit 216), which is a multi-unit storage facility is evidence of:

a. 21 U.S.C. § 841 Possession with intent to distribute a controlled substance.
b. 18 U.S.C. § 1956 Money laundering

14. I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.

Respectfully submitted,

Aaron Green
Special Agent

9

Bureau of Alcohol, Tobacco Firearms and Explosives

Subscribed and sworn to before me on July 6, 2021:

_____
Kimberly A. Jolson
United States Magistrate Judge

10

## ATTACHMENT A

*Property to be searched*

The property to be searched is Storage One Self Storage 10991 National Road SW, Etna, Ohio 43062, further described as Unit 216.

## ATTACHMENT B

*Property to be seized*

1. All records relating to violations of 21 U.S.C. § 841, those violations involving David **VARNER JR.** and occurring after January 1, 2019, including:

2. Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items will be found at Unit 216.

   a. Books, records, notes, ledgers, and other papers relating to the transportation, purchase, distribution, packaging, and sale of controlled substances, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment;

   b. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other records related to the receipt, expenditure and concealment or other disposition of income, which may be maintained in either paper form or on computers, computer disks, CD-ROM disks, DVD disks, portable storage devices, or other related equipment, relating to the distribution of controlled substances;

   c. Books, papers, and documents and information contained within cellular phones and electronic organizers reflecting names, addresses, telephone numbers, and other contact or identification information of participants in drug trafficking activities;

   d. Cash, currency, currency counters, financial instruments, and records relating to controlled substances income and expenditure of proceeds of drug transactions,

and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities;

e. Pagers, cellular phones, electronic organizers, caller identification devices, answering machine devices, and other communication devices belonging to VARNER JR and to search the contents of the listed devices at a later time;

f. Photographs, and videotape of participants in drug trafficking activities, and of property acquired from the sale of controlled substances or money laundering;

g. Bank and other financial institution records consisting of savings, loans, records of deposits, statements, letters of credit, money orders, cashier checks, passbooks, cancelled checks, certificates of deposit, lease agreements, customer account information, income and expense summaries, cash disbursement journals, financial statements, state and federal income tax returns, information related to the receipt and other disposition of income, and related financial information pertaining to the purchase, lease, sale or other disposition of real or personal property, including real estate, automobiles, jewelry, and furniture;

h. United States currency, precious metals, jewelry, and financial instruments, as well as books and records regarding the acquisition, use and disposition of such items of value;

i. Safe deposit box lease agreements and safe deposit keys;

j. Proof of residency, including but not limited to cancelled mail, deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility and telephone bills, statements, identification documents and keys: and

k. Any safes, vaults, or secured storage equipment that could secret any of the above listed items, and the contents therein.

l. Firearms and ammunition.